UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

JHAFFRE McCLAIN,

                              Petitioner,

       v.
                                                   9:18-CV-0613
                                                   (GTS/CFH)

LEROY FIELDS,

                       Respondent.

─────────────────────────────────────

APPEARANCES:                                OF COUNSEL:

JHAFFRE McCLAIN
14-A-2934
Petitioner, pro se
Fishkill Correctional Facility
P.O. Box 1245
Beacon, NY 12508

HON. LETITIA JAMES                          LISA E. FLEISCHMANN, ESQ.
Attorney for Respondent                     Ass't Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

GLENN T. SUDDABY
Chief United States District Judge

### DECISION and ORDER

## I.     INTRODUCTION

       Petitioner Jhaffre McClain seeks federal habeas relief pursuant to 28 U.S.C. § 2254.

Dkt. No. 1, Petition ("Pet.").[1]  Petitioner then successfully moved for a stay.  Dkt. No. 7; Dkt.

No. 12, Decision and Order dated 10/17/18 ("October Order"); Dkt. Nos. 13-17, Status

─────────────────────

       [1]  Citations to the parties' filings, with the exception of the State Court Record (Dkt. No. 34) which is consecutively numbered with Bates stamping on the bottom center of the page, refer to the pagination generated by CM/ECF, the Court's electronic filing system.

Reports; Dkt. No. 17.  When the stay was lifted, petitioner was given the opportunity to file an amended petition combining all his claims.  Dkt. No. 18, Text Order dated 05/09/19.

Petitioner filed an amended petition.  Dkt. No. 21, Amended Petition ("Am. Pet."). However, petitioner's amended petition did not incorporate the claims from his initial petition; accordingly, it was unclear to the Court whether petitioner intended on abandoning his original claims or wished to amend his petition to include the new claims recently exhausted via his 440 motion.  Dkt. No. 22, Decision and Order ("June Order"), at 3-4.  The Court granted petitioner one final opportunity to file an amended petition.  *Id.* at 4.

On July 31, 2019, the Court received petitioner's second amended petition.  Second Amended Petition ("Sec. Am. Pet."), Dkt. No. 25.  Respondent was directed to answer the second amended petition.  Dkt. No. 26, Decision and Order ("August Order").  Respondent filed an opposition.  Dkt. No. 33, Response; Dkt. No. 34, State Court Records ("SCR"). Petitioner did not file a reply.

## II.      RELEVANT BACKGROUND

### A.      Suppression Hearing

Petitioner was "charged in a three count indictment with two counts of Robbery in the First Degree . . . and one count of Robbery in the Third Degree," both considered violent felonies.  SCR at 009.  Petitioner (1) challenged the sufficiency of the probable cause which supported his arrest; (2) moved to suppress various property which he claimed was seized as "fruit of the poisonous tree"; and (3) moved to suppress identification testimony and statements.  *Id.*

A suppression hearing occurred on January 28, and 29, 2014, in Albany County Court.

2

SCR at 009-010; Dkt. No. 33-3 (transcript from hearing).  Following the hearing, a counseled

brief was also submitted to the court.  SCR at 024-030.  The following relevant facts to the

instant action, not otherwise disputed, were summarized by the county court in its decision:

> Detective Anthony Scalise was dispatched to . . . a business,
> Chasin Chicken Cook, to investigate a reported robbery.
>
> Arriving at the scene, Detective Scalise . . . spoke with the victims
> of the robbery who reported that five or six armed and masked
> black males had committed the robbery.
>
> Detective Scalise issued a radio bulletin for the five to six black
> males and then he and Trooper Kline drove around the block
> looking for suspects.  They returned to the Chasin Chicken Coop
> where . . .the victims reported [additional identifying information
> about] the perpetrators . . . [including that one] was wearing a
> Detroit Lions baseball cap. . . . After updating the information
> Detective Scalise and Trooper Kline returned to their vehicle.  They
> were immediately alerted to a 'shots fired' bulletin.
>
> [At the scene of the shots fired] . . . various witnesses reported two
> black males running through back yards on First Street.
>
> The officers proceed to First Street.  Along the way they were
> directed to [a particular] area . . . [of] First Street by additional
> witnesses who reported that two individuals observed at the
> location of where the shots were reportedly fired, were seen. . . . At
> an open alley . . . the officers observed, on the ground, a Detroit
> Lions baseball cap as described by the Chasin Chicken Coop
> victims.  They walked down the alley and came upon two
> individuals seated and smoking in one of the backyards. [One was]
> later identified as [petitioner] . . . One wore a t-shirt with, what
> appeared to be, bloodstains.  The other was shirtless.  They were
> sweating profusely.  Both were covered with scratches and what
> appeared . . . to be yard debris.  Several cell phones were located
> on a nearby table.
>
> Based upon the foregoing, Detective Scalise and Trooper Kline
> detained the two and called for back-up.  Detective Scalise
> returned to the Chasin Chicken Coop.  There he viewed a video
> surveillance tape that captured the robbery.  He recognized
> [petitioner] . . . wearing the Detroit Lions cap in the video.

3

. . . [Petitioner was] arrested . . . One of the cell phones seized at the time of the[] arrest[] was later identified as taken during the robbery.

Detective Tyson Ruecker . . . assisted in creating a police perimeter around the immediate neighborhood . . . [and discovered a]n amount of United States currency and a cell phone, suspected proceeds from the robbery[.]

. . .

Meanwhile, . . . Detective Michael Smith was interviewing one of the robbery witnesses . . . who indicated that he may be able to identify one or more of the perpetrators. Detective Leonard created a six person photo array which . . . included a photo of [petitioner] . . . Detective Smith escorted [the witness] down a hallway to the room where Detective Leonard had the photo array. On route, they passed [petitioner] from who was in custody in the company of [another officer]. The encounter was unplanned and inadvertent.

[The witness] was shown the photo array . . . [and] identified [petitioner] from the photo array as one of the armed robbers [and] . . . then remarked, "That's the guy I just passed in the hall," or words to that effect.

[Petitioner] was taken to an interview room where he was given Miranda warnings by Detective Cornell. When asked if he wanted to waive his rights, [petitioner] responded with an affirmative nod. [Petitioner] spoke . . . for a short time and then asked for counsel. Questioning ceased at that point.

SCR at 010-013.

The court first noted that the officers had probable cause authorizing petitioner's arrest. SCR at 014-016. Specifically, the court explained that the officers had "an articulable, credible, objective basis to request information and . . . conclude that criminality may be afoot" when petitioner (1) was located in close proximity to the crime and even closer proximity to a Detroit Lions baseball cap reportedly worn by one of the perpetrators; (2) was sweating profusely; and (3) was covered in scratches and yard waste. SCR at 016. Furthermore,

4

Detective Scalise's return to the Chicken Coop and identification of petitioner from the surveillance footage "provided probable cause for his arrest." *Id.* Moreover, "[b]ased upon the foregoing, . . . the tangible property seized from, at or near the scene of [petitioner's] . . . arrest [should not be suppressed] as the police had the requisite probable cause to take them into custody." SCR at 017.

Furthermore, with respect to petitioner's motion to suppress his identification from the surveillance video, the motion was denied because it was confirmatory. SCR at 017. Detective Scalise's "identification occur[ed] at a time and place sufficiently connected with and contemporaneous to the arrest to constitute the ordinary and proper completion of an integral police procedure." SCR at 017-018. Further, with respect to petitioner's motion to suppress his identification from the photo array, the court found "the procedure and circumstances surrounding the photographic identification to be in conformity with constitutional requirements." SCR at 018. Moreover, petitioner failed to demonstrated that the procedure was unduly suggestive. SCR at 019. Lastly, the court found "that the identification procedure was not fatally tainted by [the witness] passing [petitioner] in the hall," because it was accidental. *Id.*

Lastly, the Court denied petitioner's challenges to the sufficiency of his Miranda warnings waiver and to suppression of the statements he made during the subsequent questioning. SCR at 019-020.

### B.    Plea and Sentencing

On May 15, 2014, petitioner appeared, with counsel, in Albany County Court to decide whether to enter a guilty plea. Dkt. No. 33-2 at 1-9 (transcript of first plea hearing). The court explained that if petitioner pled guilty to Robbery in the Second Degree, he would receive a

ten-year determinate sentence, with five years of post-release supervision, and various surcharges and fees; however, he would have to waive his right to appeal. *Id.* at 3. Petitioner's counsel explained petitioner's intention to alternately plead guilty to the entire indictment so that he retained his ability to appeal. *Id.* The Court confirmed that option, but stressed that the sentence in that instance would probably not be less than ten years and could range, on the high end, to up twenty-five years determinate, with a period of post-release supervision. *Id.* at 3-5. Petitioner acknowledged the risk that he was taking and expressly stated his desire to plead guilty to the entire indictment. *Id.* at 5.

Petitioner was then placed under oath. Dkt. No. 33-2 at 6. When the court questioned petitioner about whether his counsel had advised him on the strengths and weaknesses of his case and the possible defenses he could raise, petitioner indicated significant confusion. *Id.* at 7-8. The court stated that it would not accept petitioner's plea at that time, and the court placed the case on the calendar for jury selection on July 7, 2014. *Id.* at 9.

On May 27, 2014, petitioner again appeared in Albany County Court, with counsel, to enter a guilty plea. Dkt. No. 33-2 at 10-26 (transcript of second plea hearing). After reviewing the events from the May 15th appearance, petitioner's counsel indicated that they had "spent a good amount of time together and [she] believe[d petitioner was] ready to go forward[.]" *Id.* at 12.

Petitioner again acknowledged his understanding that, if he chose to plead guilty to the indictment instead of an individual count, he was not promised a particular sentence and, in fact, the range that he would be exposed to may be considerably higher. Dkt. No. 33-2 at 12-13. Petitioner was again placed under oath. *Id.* at 14.

Petitioner first explained that he had discussed the matter with his attorney, to his

6

satisfaction, as well as anyone else with whom he might need to confer.  Dkt. No. 33-2 at 14.

Specifically, petitioner confirmed that they had discussed the strengths and weaknesses of his

case, he had seen the evidence against him, they had discussed possible defenses – legal,

constitutional, and affirmative – and, in sum, petitioner was satisfied with the legal

representation he had received and was prepared to move forward with his plea.  *Id.* at 14-16.

Petitioner also assured the court that he was of sound mind and body, refraining from

the consumption of any drugs or alcohol which may impair his ability to think or make a

decision.  Dkt. No. 33-2 at 16-17.  The court again asked petitioner if he was sure he wanted

to plead guilty "to an indictment which includes two Armed . . . Class B Felonies and one

Class C Violent Felony," and petitioner stated, "Yes."  *Id.* at 17.  Petitioner stated his

understanding that a plea of guilty was the same thing as a guilty verdict, and that no one was

forcing, threatening, or coercing him to plead guilty.  *Id.*  In sum, petitioner was "pleading guilty

freely and voluntarily" and "because [he was,] in fact, guilty of the three charges in the

indictment[.]" *Id.* at 17-18.

The court again took the opportunity to stress to petitioner that, by pleading guilty to all

three counts in the indictment, the maximum sentence which he could receive was twenty-five

years determinate incarceration and five years post-release supervision.  Dkt. No. 33-2 at 18.

Petitioner again stated that he understood.  *Id.*  Just to make sure petitioner was aware of the

potential future consequences of his plea, the court also explained that if petitioner was "in the

future convicted of another felony, that [his] convictions [that day] by a plea of guilty could

cause [him] to receive a greater sentence in the future than if [he] had not been convicted[.]"

*Id.*  Petitioner again expressed his understanding.  *Id.*

The court then explained what rights petitioner would be giving up, namely the right to

any further hearings since the matter was being resolved that day with the plea.  Dkt. No. 33-2

at 19.  Conversely, the court listed the rights petitioner would still retain, namely the right to

appeal "any and all aspects of th[e] prosecution" outside of the indictment.  *Id.*  Petitioner

again stated that he wished to move forward and that he thought this course of action was in

his best interest.  *Id.* at 19-20.

The court then began the allocution:

| | |
|---|---|
| THE COURT: | All right.  Did you personally, or acting in concert with others, on July 11 of last year, at about 10:58, . . . in the City and County of Albany, New York, forcibly steal property, and when in the course of the commission of the crime or immediate flight therefrom, you or one of the other participants in the crime is armed with a deadly weapon; specifically at that time, date and place, you acting with three others forcibly stole property and when in the course of the commission of the crime or immediate flight therefrom, you or one of the other participants was armed with a loaded handgun, a firearm; is that true? |
| [PETITIONER]: | Yes. |
| THE COURT: | Were you personally present . . . during the late evening hours of July 11 of last year? |
| [PETITIONER]: | Yes. |
| THE COURT: | And at that time, date, and place, did you, together with others, enter the business . . . armed with a firearm? |
| [PETITIONER]: | Yes. |
| THE COURT: | And did you forcibly steal property from one or more of the occupants of that building? |
| [PETITIONER]: | Yes. |

8

Dkt. No. 33-2 at 20-22.  Petitioner then pled guilty to each individual count.  *Id.* at 22-24.  The court accepted petitioner's plea and a sentencing hearing was scheduled.  *Id.* at 24.

On June 24, 2014, petitioner appeared with counsel for sentencing.  Dkt. No. 33-2 at 27-38.  Petitioner acknowledged he had previously been convicted of Second Degree Robbery on December 6, 2000, and First Degree Criminal Sale of a Controlled Substance on September 29, 2010.  *Id.* at 30-31.  On the two first degree robbery counts, the court imposed concurrent, determinate prison terms of eleven and one-half years, plus five years of post-release supervision.  *Id.* at 36-37.  On the second degree robbery count, the court imposed a ten-year determinate prison term, plus five years of post-release supervision, to run concurrently with the sentences on the first degree robbery counts.  *Id.* at 37.

### C.    The Direct Appeal

Petitioner filed a counseled brief with the Appellate Division, Third Department, claiming that (1) the witness identification should have been suppressed because questionable police procedures resulted in the witness seeing petitioner, at the police station, in handcuffs prior to the photo array, and (2) petitioner's motion to suppress should have been granted because his detention was illegal.  SCR at 063-076.  Petitioner also filed a pro se brief arguing that he was entitled to relief because (3) the *Debour* 4 Tier analysis for police-citizen encounters did not apply to police investigations at a private residence, and (4) Police Officer Scalise illegally entered private property without a warrant.  SCR 142-165.  The People filed a brief in opposition.  SCR at 232-244.  Petitioner filed both a counseled and pro se reply.  SCR at 246-279.

On December 8, 2016, the Third Department affirmed the judgment of conviction.

9

*People v. McClain*, 145 A.D.3d 1192, 1194 (3rd Dep't 2016).[2]  The Third Department first

rejected the claim that evidence was obtained pursuant to an illegal detention.  *Id.* at 1193-94.

Specifically, the court held that

> [g]iven [petitioner's] geographical and temporal proximity to both
> the scene of the armed robbery and the area where shots were
> fired, the presence of the baseball cap matching the one reportedly
> worn by one of the perpetrators and [petitioner's] physical
> appearance upon being approached by the officers, we find that
> the police possessed reasonable suspicion that [petitioner] has
> committed a crime and were therefore authorized to forcibly stop,
> frisk and detain him.

*Id.*  Further, when Scalise then "viewed surveillance of the incident and determined that

[petitioner] was one of the assailants, probable cause existed for his arrest."  *Id.* at 1194.

The Third Department also rejected petitioner's claims that the identification procedure

was unduly suggestive because the events resulting in the witness seeing petitioner on the

way to the photo array were "accidental, spontaneous and not the product of police

misconduct or questionable police procedures."  *McClain*, 145 A.D.3d at 1194.  Finally, the

court determined that the remaining contentions presented in the pro se brief were

unpreserved.  *Id.*

Petitioner filed both a counseled and pro se application seeking leave to appeal to the

New York State Court of Appeals.  SCR at 283-289.  On February 23, 2017, the Court of

Appeals denied the applications.  *People v. McClain*, 28 N.Y.3d 1186 (2017).[3]  Petitioner also

unsuccessfully moved for reconsideration.  *People v. McClain*, 29 N.Y.3d 1034 (2017).  He

did not seek a writ of certiorari.  Sec. Am. Pet. at 3.

---

[2]  A copy of the Third Department decision was included in the State Court Record.  SCR at 281-282.

[3]  A copy of the Court of Appeals decision was included in the State Court Record.  SCR at 292.

### D.    Motion to Vacate Judgment

On June 4, 2018, petitioner filed a motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10 ("440 motion").  SCR at 294-326.  Petitioner argued that he was entitled to relief because (1) his counsel was constitutionally ineffective when she advised petitioner to enter a guilty plea to the entire indictment; (2) petitioner's plea was unenforceable because his waiver of his appellate rights was unknowing and involuntary; and (3) the trial court erred in finding probable cause for petitioner's arrest because the officer entered his private property without a warrant.  *Id.*  The People opposed the motion.  SCR at 418-421.

In a Decision and Order dated September 26, 2018, the Albany County Court denied petitioner's motion.  SCR at 428-429.  The court's decision explained that petitioner's plea did allow him to appeal the findings of the suppression hearing, which he did, albeit unsuccessfully.  SCR at 429.  Moreover, to the extent that the Third Department classified claims as unpreserved, they were the pro se claims petitioner proffered in his brief.  *Id.*  Unpreserved for review is distinguishable from waiving one's right to appeal.  *Id.*  Further, the county court found that a 440 motion is not a substitute for a direct appeal and those claims based on the record; therefore, all of petitioner's issues, including his ineffective assistance of counsel claim, should have been brought during his direct appeal and not in his later 440 motion.  *Id.*

Petitioner sought leave to appeal the county court's denial.  SCR at 434-435.  On March 9, 2019, the Third Department denied petitioner's application.  SCR at 563.

### III.    The Second Amended Petition

Petitioner is challenging his 2014 judgment of conviction, upon a guilty plea, of first and

second degree robbery.  Pet. at 1; *see also People v. McClain*, 145 A.D.3d 1192, 1192 (3rd

Dep't 2016).  Petitioner contends that he is entitled to habeas relief because (1) his counsel

was ineffective for advising him that by pleading guilty to the indictment he would preserve his

right to appeal (Sec. Am. Pet. at 5-7,18); (2) his due process rights were violated when the

court permitted him to agree to a plea bargain whereupon he could allegedly maintain his

rights to appeal and failed to discuss forfeiture of those rights with him (*id.* at 7-8, 18-19); and

(3) petitioner's Fourth Amendment rights were violated when he was (a) subjected to an

unduly suggestive identification procedure (*id.* at 8-10, 19-21) and (b) the victim of an illegal

search and seizure (*id.* at 10-12, 21-25).

## IV.    DISCUSSION

### A.    Timeliness of Second Amended Petition

When a petitioner wants to add new claims to his habeas petition after the expiration of

AEDPA's one-year statute of limitations, he or she must show that the proposed amendment

"relates back" to the claims in the original, timely petition.  Fed. R. Civ. P. 15(c); *Mayle v.*

*Felix*, 545 U.S. 644, 664 (2005).  The definition of Rule 15(c)'s "conduct, transaction, or

occurrence" in the habeas context does not encompass a petitioner's state-court criminal

"trial, conviction, or sentence."  *Mayle*, 545 U.S. at 656-57.  To hold otherwise would mean

that "virtually any new claim introduced in an amended petition" would "relate back" under

Rule 15(c), since "federal habeas claims, by their very nature, challenge the constitutionality

of a conviction or sentence, and commonly attack proceedings anterior thereto."  *Id.*  Instead,

the original and amended petitions must "state claims that are tied to a common core of

operative facts," *Mayle*, 545 U.S. at 664, and must arise from "the conduct, transaction or

occurrence set out–or attempted to be set out–in the original pleading[.]"  Fed. R. Civ. P.

15(c)(1)(B).  If the amended petition asserts a new ground for relief that is supported by facts that are different "in both time and type" from those in the original pleading, the amended petition does not relate back.  *Mayle*, 545 U.S. at 649-50, 657.

In this case, the Third Department affirmed petitioner's conviction and, on May 22, 2017, the Court of Appeals ultimately denied petitioner's application for leave to appeal. *McClain*, 145 A.D.3d at 1194, *lv. to appeal denied*, 28 N.Y.3d at 1186, *recon. denied by*, 29 N.Y.3d at 1034 *see also Florio v. Cuomo*, No. 1:10-CV-0998, 2010 WL 5222123, at *6 (S.D.N.Y. Nov. 16, 2010) (calculating the date the conviction became final ninety days from when the Court of Appeals denied petitioner's motion for reconsideration of the denial of the application for leave to appeal) (citing cases).  Petitioner did not file a writ for certiorari; therefore, his conviction became final for purposes of AEDPA ninety days later, on August 21, 2017, and he therefore had until August 21, 2018, to file his habeas petition.[4]  28 U.S.C. §2244(d)(1);[5] *Saunders v. Senkowski*, 587 F.3d 543, 548-49 (2d Cir. 2009).  Petitioner's second amended complaint was filed on July 25, 2019.  That is almost a year beyond the limitations period.

Petitioner's 440 motion, filed on June 4, 2018, does little to help.  When the 440 motion was filed, 287 days of the limitations period had elapsed.  Petitioner's properly filed motion served to toll the statute of limitations from the date it was filed, on June 4, 2018, through the

---

[4] The day petitioner's conviction because final was on August 20, 2017, which was a Sunday.  *See* Fed. R. Civ. P. 6(a)(1)(C).

[5] Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed, the date on which the constitutional right on which the petitioner bases his habeas application was initially recognized by the Supreme Court, if the right was newly recognized and made retroactively applicable, or the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence). 28 U.S.C. § 2244(d)(1)(B)-(D).  None of these instances are applicable in the instant action.

13

date the Third Department denied petitioner's leave application, on March 9, 2019. 28 U.S.C. § 2244(d)(2); *Saunders,* 587 F.3d at 548. Accordingly, petitioner had 78 days remaining, or until May 27, 2019, to file the second amended petition within the one year limitations period. Petitioner's second amended petition, filed on July 25, 2019, came approximately two months too late.

Petitioner's original petition, dated May 13, 2018, was timely, but any new claims are not unless they relate back to the original petition, or equitable tolling or an equitable exception applies.[6]

First, with respect to relation back, the Court concludes that petitioner's proposed additional grounds for relief lack a "clear connection" to, and do not relate back to, the original petition. *Gibson v. Artus*, 407 F. App'x. 517, 519 (2d Cir. 2010) (summary order); *Jones v. Conway*, No. 6:09-CV-6045, 2010 WL 5479649, at *2 (W.D.N.Y. Dec. 29, 2010).

Petitioner's original petition sought federal habeas relief because (1) petitioner was unlawfully arrested because the police did not suspect him of committing a crime; (2) the photo array was unduly suggestive; (3) his expectation of privacy, while sitting in his backyard, was violated when the police trespassed on his private property without a warrant; and (4) the hearing court erred when it failed to set forth findings of facts, conclusions of law, and reasons for its determination. Pet. at 7-12.

In the second amended petition, petitioner contends he is entitled to relief because (1) his counsel was ineffective for advising him that by pleading guilty to the indictment he would

---

[6] The filing of petitioner's federal habeas petition did not operate to toll AEDPA's statute of limitations because it is not an "application for State post-conviction or other collateral review" within the meaning of 28 U.S.C. § 2244(d)(2). *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

preserve his right to appeal (Sec. Am. Pet. at 5-7,18); (2) his due process rights were violated when the court permitted him to agree to a plea bargain whereupon he could allegedly maintain his rights to appeal and failed to discuss forfeiture of those rights with him (*id.* at 7-8, 18-19); and (3) petitioner's Fourth Amendment rights were violated when he was (a) subjected to an unduly suggestive identification procedure (*id.* at 8-10, 19-21) and (b) the victim of an illegal search and seizure (*id.* at 10-12, 21-25).

Only one claim in the original petition "even hint[s]" at a claim that petitioner now seeks to add. *Brown v. Donnelly*, 258 F. Supp. 2d 178, 184 (E.D.N.Y. 2003). The Fourth Amendment issue relates back to the original petition; therefore, it is timely. However, the remaining issues do not. More specifically, the original petition focuses solely on Fourth Amendment violations and says nothing about the quality of the representation that petitioner received or the voluntariness of his plea. The two claims rely on discrete facts that are different "in both time and type" from the grounds asserted in his original, timely petition. *Mayle*, 545 U.S. at 649-50, 657.

AEDPA's one-year statute of limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010) (citing, *inter alia*, *Smith* 208 F.3d at 17). The Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011). A petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008).

15

"Equitable tolling also may be appropriate if the applicant is actually innocent . . . [as a]n actual innocence argument is premised on the same fundamental miscarriage of justice exception that was discussed by the Supreme Court[.]" *Germain v. Racette*, No. 9:13-CV-1530 (MAD/DEP), 2015 WL 7709606, at *10 (N.D.N.Y. Sept. 10, 2015) (internal quotation marks and citations omitted).  An actual innocence claim will be recognized only in a "narrow class of truly extraordinary cases [where a petitioner can] present[] credible and compelling claims of actual innocence." *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019) (citing *Schlup v. Delo*, 513 U.S. 298, 315 (1995)) (internal quotation marks omitted); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (noting that the actual innocence gateway standard is "demanding and permits review only in the extraordinary case.") (internal quotation marks omitted).  "The petitioner's burden in making a gateway showing of actual innocence is deliberately demanding." *Hyman*, 927 F.3d at 656 (citing cases).

In this case, petitioner has failed to proffer any arguments, let alone ones sufficient enough to meet the strenuous burden of either the equitable tolling or miscarriage of justice standards.  Petitioner completely fails to indicate what extraordinary circumstances prevented him from timely filing his petition.  Because there is "a high bar to deem circumstances sufficiently extraordinary to warrant equitable tolling," the complete failure to identify any such circumstances is fatal to the petition.  *Dillon*, 642 F.3d at 363.  Further, petitioner offers no new evidence of his innocence.  Accordingly, petitioner has failed to plead, let alone demonstrate, actual innocence as that term is defined by the Supreme Court; therefore, he is not entitled to use actual innocence as a gateway to federal habeas review of his untimely petition.  *McQuiggin*, 569 U.S. at 386.

16

Accordingly, the petition is not entitled to equitable tolling.  Therefore, the claims

seeking relief for ineffective assistance of counsel and an involuntary plea are untimely.[7]

Thus, their review is barred by the statute of limitations.

## B.    Cognizability of Fourth Amendment Claims

Petitioner's Fourth Amendment claims – that he was subjected to an unduly suggestive

identification procedure and the victim of an illegal search and seizure – are foreclosed by

*Stone v. Powell*, 428 U.S. 465 (1976).  Pursuant to *Stone*, "where the State has provided an

opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not

require that a state prisoner be granted federal habeas corpus relief[.]"  428 U.S. at 482;

---

[7]  Given the Court's determination that two of the three constitutional claims in petitioner's second amended complaint are untimely, the Court need not further discuss the merits analysis regarding effective assistance of counsel and the voluntariness of petitioner's plea.  *See* Dkt. No. 33 at 18-22.  However, for the reasons stated in petitioner's brief, the Court agrees with their analysis.  The ineffective assistance of counsel discussion is outlined below.  The voluntariness of the plea is *infra* p.19 n.8.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different, and as a result, petitioner suffered prejudice. *Premo v. Moore*, 562 U.S. 115, 121-22 (2011); *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  The standard "must be applied with scrupulous care" in habeas proceedings, because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]" *Premo*, 562 U.S. at 122. "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted). A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Even if petitioner can establish that counsel was deficient, he still must show that he suffered prejudice. *Id*. at 693-94.

The *Strickland* test applies "to challenges to guilty pleas based on ineffective assistance of counsel." *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).  To establish prejudice in this instance, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Here, counsel was an effective advocate. While petitioner faced a maximum sentence of 25 years, counsel was able to negotiate receiving a sentence of ten years if he waived his right to appeal and something less than the maximum, with the ability to appeal the suppression hearing rulings, if he did not.  While petitioner contends he received erroneous advice from the court and his counsel, that is just patently untrue.  Petitioner did not need to proceed to trial to challenge the Fourth Amendment violations he previously unsuccessfully raised during his suppression hearing.  This is demonstrated by the fact that those claims were raised and decided, on the merits, during petitioner's direct appeal. Further, there is no way that petitioner can demonstrate that he was prejudiced by pleading guilty and receiving a sentence far shorter than the maximum. This is because there was extensive evidence – videotaped surveillance, police officer and witness testimony, evidence found in petitioner's possession that was taken during the robbery – that pointed to petitioner's guilt.

17

*accord Graham v. Costello*, 299 F.3d 129, 133-134 (2d Cir. 2002).  "The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed." *Collier v. Superintendent, Coxsackie Corr. Facility*, No. 9:18-CV-1104 (JKS), 2020 WL 2341062, at *11 (N.D.N.Y. May 11, 2020) (citing *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983)).

The only requirement under *Stone* is that the state provide a petitioner the "opportunity" to litigate a Fourth Amendment claim.  *McPhail v. Warden*, *Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983).  Therefore, habeas review is only available: "(a) if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)); *accord Hirsh v. McArdle*, 74 F. Supp. 3d 525, 532-533 (N.D.N.Y. 2015).

The Second Circuit has recognized that New York provides adequate procedures to redress Fourth Amendment violations.  *Capellan*, 975 F.2d at 70 & n.1 (citing a motion to suppress evidence, pursuant to CPL § 710.10 *et seq*., as a "facially adequate" and "approved" procedure for adjudicating alleged Fourth Amendment violations); *see also, e.g, Blake v. Martuscello*, No. 10-CV-2570, 2013 WL 3456958, at *5 (E.D.N.Y. July 8, 2013) (citing CPL § 710.10 and finding that the Second Circuit has explicitly approved New York's procedure for litigating Fourth Amendment claims).

[O]nce it is established that a petitioner has had an opportunity to

> litigate his or her Fourth Amendment claim (whether or not he or
> she took advantage of the state's procedure), the court's denial of
> the claim is a conclusive determination that the claim will never
> present a valid basis for federal habeas relief.

*Graham*, 299 F.3d at 134.

Here, petitioner availed himself of a suppression hearing and was upset with its result,

as well as the outcome of his subsequent appeal.  *See* SCR at 009-020; Dkt. No. 33-3.

However, disagreement with the state court outcome is insufficient to warrant habeas review.

*Gates v. Henderson*, 568 F.2d 830, 840 (2nd Cir. 1977).  Instead, what is important is access

to the opportunity to litigate the Fourth Amendment claims: an opportunity which petitioner

both had available to him and pursued.  Petitioner cannot now argue that he was precluded

from pursuing a suppression hearing due to an "unconscionable breakdown in the underlying

process."  *Capellan*, 975 F.2d at 70.  Any such contentions would be disingenuous given

petitioner's history in the state courts.

Accordingly, petitioner has failed to state a cognizable claim.[8]

---

[8]  Moreover, it is important to note that petitioner's conviction was rendered pursuant to a guilty plea.

> [A] guilty plea represents a break in the chain of events which has preceded it in the
> criminal process. When a criminal defendant has solemnly admitted in open court
> that he is in fact guilty of the offense with which he is charged, he may not thereafter
> raise independent claims relating to the deprivation of constitutional rights that
> occurred prior to the entry of the guilty plea. He may only attack the voluntary and
> intelligent character of the guilty plea by showing that the advice he received from
> counsel was not within the [constitutionally required] standards[.]

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003)
("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional
defects in the prior proceedings."); *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (explaining that where
a petitioner provides a counseled guilty plea, "the issue is not the merits of [petitioner's] independent claims . . . but
rather whether the guilty plea had been made intelligently and voluntarily with the advice of competent counsel.")
(internal quotation marks and citations omitted).

    "Since Fourth Amendment rights are nonjurisdictional, a knowing and voluntary guilty plea waives claims
stemming from an alleged Fourth Amendment violation."  *Taylor v. Unger*, No. 1:11-CV-1078, 2012 WL 5288733,
at *4 (W.D.N.Y. Oct. 23, 2012) (citing *inter alia United States v. Arango*, 966 F.2d 64, 66 (2d Cir. 1992)).  In
evaluating whether a plea was knowing and voluntary, a court may consider, "among other things, [petitioner's]
allocution statements."  *Carpenter v. Unger*, 9:10-CV-1240 (GTS/TWD); 9:12-CV-0957 (GTS/TWD), 2014 WL

## V.     CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the second amended petition, Dkt. No. 25, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[9] and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

Dated: September 21, 2021
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

---

4105398, at \*19 (N.D.N.Y. Aug. 20, 2014) (citing *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)); *see also Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.); *Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. Aug. 19, 2004) ("Where . . . [petitioner] . . . has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on [petitioner's] sworn statements and hold him to them.").

In this case, despite petitioner's conclusory and self-serving statements in his second amended petition that he did not understand the options available to him or the consequences of each decision, his own words during his plea hearing invalidate his claims. On no less than three different occasions during the short course of petitioner's plea hearing, the court confirmed, and reconfirmed, that petitioner was sure that he wanted to plead guilty to the indictment. Petitioner acknowledged his understanding and continued to express his desire to plead guilty. Further, petitioner represented that he was of sound mind and body, that he was happy with his counsel's advice, and that he had spent considerable time reviewing the evidence and discussing the various defenses available to him. Petitioner's own statements belie any claims of confusion or misunderstanding. Petitioner was acutely aware of what he was agreeing to, as he expressed that understanding several different times after being asked several different ways.

Accordingly, even if petitioner had proffered a cognizable claim, his plea served to waive it.

[9]  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).